UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FACILITY GUIDELINES INSTITUTE, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: |
| UPCODES, INC., | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) | |

**PLAINTIFF FACILITY GUIDELINES INSTITUTE, INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

**I.    INTRODUCTION**

Defendant UpCodes, Inc. ("UpCodes") is copying, publishing, and distributing copies of Plaintiff Facility Guidelines Institute, Inc.'s ("FGI") federally copyrighted materials, without license or authority from FGI. This unauthorized and unlawful copyright infringement and unfair competition needs to stop immediately. FGI brings this motion to end this unjustified infringement of its rights.

Plaintiff FGI is an independent, non-governmental, not-for-profit 501(c)(3) Missouri corporation based here in St. Louis County, Missouri. FGI's mission is to establish and promote consensus-based construction guidelines and publications for health care facilities, such as hospitals, outpatient facilities, and residential health facilities. *See* Declaration of Douglas Erickson, ¶ 5 ("Erickson Decl."). As testified to by Mr. Erickson, FGI's CEO and President Elect, FGI was founded in 1998, to establish a more formal and comprehensive process for reviewing, revising, updating, and publishing guidelines pertaining to the construction of health care facilities, which guidelines now include: (1) *Guidelines for Design and Construction of*

*Hospitals*, (2) *Guidelines for Design and Construction of Outpatient Facilities*, and (3) *Guidelines for Design and Construction of Residential Health, Care, and Support Facilities* (collectively, the "FGI Guidelines"). *Id*. ¶¶ 6–7.

FGI ensures that the FGI Guidelines are reviewed and revised on a regular cycle in a consensus process carried out by a multidisciplinary group of experts, and reinvests all of the net revenue FGI receives from sales of the FGI Guidelines to research and development for improved future editions of the FGI Guidelines. *Id*. ¶ 16. FGI published its first edition of the FGI Guidelines in 2001, and, since 2006, FGI has published regular updates to the FGI Guidelines on a four-year development and release cycle, including new editions published in 2010, 2014, 2018, and 2022. *Id*. ¶¶ 6, 9. FGI owns federal copyright registrations for each edition published since 2006. *Id*. ¶ 9; *see also* Complaint, ¶ 49.

Unlike many other standard-setting bodies, FGI is not a trade group. Erickson Decl. ¶ 10. FGI does not have members, sponsors, or affiliates who provide funding through membership fees or dues. *Id*. Instead, FGI intentionally maintains neutrality and independence from outside influence, which allows FGI to develop and publish standards based on engineering principles and research alone, and not the preferences of paying members or sponsors. *Id*. ¶ 11. Thus, FGI's *only* recurring source of revenue is sales of copies of the FGI Guidelines. *Id*. ¶ 12. These proceeds fund the drafting and revision process for subsequent editions. *Id*. ¶ 16. **Without these sales, FGI cannot continue its mission and would be unable to maintain, update, and publish future versions of the FGI Guidelines.** *Id*.

Defendant UpCodes is a for-profit enterprise which operates a website at https://up.codes (the "UpCodes Website") on which it publishes various codes and standards, including privately-developed codes and standards, such as the FGI Guidelines. Complaint, ¶¶ 5–6; Declaration of

2

Lindsey Bruno ("Bruno Decl."), ¶ 3. UpCodes has never sought or received permission from FGI to publish or use the FGI Guidelines. Erickson Decl. ¶ 21. In 2021, UpCodes touted receiving a more than $4 million in venture capital funding. Complaint, ¶ 6; Bruno Decl. ¶ 13.

In addition to publishing the copyrighted works of others on its website for free download by the general public, UpCodes sells access to a "code compliance platform" known as "UpCodes Premium," essentially a paid version of its website with additional features. Complaint ¶ 6; Bruno Decl. ¶ 8. The paid version includes, according to the UpCodes Website, various reference, research, and collaboration tools, notable among them being a search function, code updates, local document styling, and code diagrams. Bruno Decl. ¶ 8. The top of the UpCodes Website consistently displays a "Contact Sales" banner to encourage visitors to sign up for the paid UpCodes Premium. *Id*. ¶ 9; Complaint ¶ 41. Once a visitor clicks into the free section of the website, UpCodes displays a solicitation to start a free two-week trial of the paid UpCodes Premium service and to contact UpCodes' sales team. Bruno Decl. ¶ 10; Complaint ¶ 41.

UpCodes does not share any portion of the revenues it derives from the use of FGI's copyrighted materials with FGI. Erickson Decl. ¶ 23. UpCodes rationalizes its misappropriation of the intellectual property of others by reframing its infringement as a fight to "keep the law free." *See, e.g.*, Bruno Decl. ¶ 11 (attaching excerpts from https://up.codes/free-law as Exhibit M.) However, the FGI materials UpCodes uses are not "the law."

UpCodes is well aware of copyright rights, and of the exclusive rights of copyright holders. The UpCodes Terms of Service contain an "Intellectual Property Rights" section in which UpCodes expressly reserves "all intellectual property rights relating to the [UpCodes] Services or the Software or any suggestions, ideas, enhancement requests, feedback, recommendations or other information provided by Customer or any third party relating to the Services and/or the

Software, which are hereby assigned to UpCodes." Bruno Decl. ¶ 12 (attaching http://up.codes/tos as Exhibit N). Further, UpCodes' Terms of Service provide that subscribers "will not copy, distribute, reproduce or use any of the foregoing except as expressly permitted under this Agreement[.]" *Id*. In other words, UpCodes professes knowledge of the exclusive rights afforded to the owners of copyrights, as its own terms of use reflect the exclusive rights granted to copyright owners under 17 U.S.C. § 106. In short, UpCodes itself attempts to ensure that it, and it alone, owns and controls all such rights to its own intellectual property.

UpCodes has knowingly, willfully, and intentionally reproduced the 2018 FGI Guidelines in copies, distributed those copies to the public, publicly displayed those copies on its website, and prepared derivative works of each of the 2018 editions of the FGI Guidelines. UpCodes' intentional conduct constitutes a flagrant infringement of FGI's rights under the Copyright Act, and unfair competition under Missouri law. FGI comes to this Court seeking to end this blatant misappropriation and unauthorized use of FGI's copyrighted works. Because UpCodes' conduct has created, and continues to create, a threat of irreparable harm to FGI, FGI seeks a preliminary injunction to prevent UpCodes from further infringing FGI's copyrights, including by requiring UpCodes to remove from its website all references to and use of the FGI Guidelines, and all derivative works based on the FGI Guidelines.

## II. ARGUMENT

### a. Standard for Preliminary Injunction.

In considering whether to grant a motion for preliminary injunction, this Court must: (a) determine whether FGI has a "fair chance of prevailing" on its claims; (b) determine whether there exists a threat of irreparable harm to FGI absent the entry of an injunction; (c) balance the harms; and (d) weigh the public interest. *See D.M. by Bao Xiong v. Minnesota State High Sch.*

4

*League*, 917 F.3d 994, 999 (8th Cir. 2019). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *W. Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). As demonstrated by the Complaint and accompanying exhibits and declarations hereto, FGI is clearly entitled to a preliminary injunction.

      b.     **FGI Has More Than a "Fair Chance" of Prevailing on Its Claims.**

To show that FGI has a "fair chance" of prevailing on its claims, FGI need not show that it is more likely than not that FGI will prevail, nor must FGI show a greater than fifty percent chance it will prevail. *Minnesota State*, 917 F.3d at 999 (quoting *Rounds*, 530 F.3d at 731); *see also Brooks v. Francis Howell Sch. Dist.*, -- F. Supp. 3d --, 2022 WL 1185147 (E.D. Mo. 2022) (explaining that the "fair chance" standard "reflects the Eighth Circuit's rejection of a requirement that a party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits.") (internal quotations omitted).[1] Rather, this factor only requires FGI to show "a reasonable probability of success." *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013). FGI easily meets this low standard. In fact, FGI here has a high likelihood, rather than just a "fair chance", of prevailing on its claims because UpCodes is engaged in clear, direct infringement of FGI's copyrights without any viable defense.

---

[1] This factor is only heightened to a "more rigorous standard" of whether the movant is "likely to prevail" when the movant is seeking to "enjoin the implementation of a duly enacted state statute," which is not the case here. *Minnesota State*, 917 F.3d at 999–1000; *see also Barrett v. Claycomb*, 936 F. Supp. 2d 1099, 1103 (W.D. Mo. 2013) ("[T]he Court should apply the less rigorous fair chance of prevailing test where a preliminary injunction is sought to enjoin something other than government action based on presumptively reasoned democratic processes.") (internal quotations omitted).

### i. Count I – Copyright Infringement (17 U.S.C. § 501).

To establish *prima facie* copyright infringement, FGI must show that: (1) it owns a valid copyright in the works infringed; and (2) UpCodes violated at least one of FGI's exclusive rights to use of the copyrighted works under 17 U.S.C. § 106. *Sohm v. Scholastic Inc.*, 959 F.3d 39, 48 (2d Cir. 2020).

FGI can easily establish ownership of valid copyrights in the works infringed. FGI has attached to its Complaint true and accurate copies of the copyright registration certificates for each of the 2018 editions of the FGI Guidelines, verified by FGI's CEO and President Elect, Douglas Erickson. Complaint, Exhibits A–C; Erickson Decl. ¶ 9 and Exhibits A–C thereto. The Copyright Act provides that "[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). The Certificate of Registration for the three works at issue – 2018 editions of the FGI Guidelines – were all issued well within the five-year period. Accordingly, the Certificates of Registration for all three works constitute *prima facie* evidence of valid copyrights. *Infogroup, Inc. v. DatabaseLLC*, 956 F.3d 1063, 1066 (8th Cir. 2020) ("Certificates of Registration are entitled to a rebuttable presumption of the validity of [the] copyright[.]").

Likewise, FGI clearly will prevail on the second factor, namely UpCodes' unauthorized copyright, reproduction, and publication of the copyrighted FGI Guidelines. FGI has reviewed the versions of the FGI Guidelines published on UpCodes Website and confirmed they are exactly what UpCodes claim them to be: the 2018 editions of the FGI Guidelines. Erickson Decl. ¶ 19; Bruno Decl. ¶¶ 3–7 and Exhibits E–K thereto. Moreover, there is no dispute that UpCodes was not licensed or otherwise authorized to use the FGI Guidelines in any matter. Erickson Decl.

¶¶ 21–22. UpCodes cannot plausibly dispute that it has engaged in multiple violations of the exclusive rights afforded to FGI as the copyright holder under 17 U.S.C. § 106, including: infringing FGI's exclusive right to reproduce copies of the FGI Guidelines under Section 106(1) and to distribute copies to the public under Section 106(3) (*see*, *e.g.*, *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 906 (8th Cir. 2012) (uploading online and making available to the public infringed the right to distribute a copyrighted work and infringed the right to reproduce the content, warranting a preliminary injunction)); infringing FGI's exclusive right to display the FGI Guidelines publicly under Section 106(5) (*see*, *e.g.*, *Bell v. Wilmott Storage Services, LLC*, 12 F.4th 1065, 1073 (9th Cir. 2021) ("a computer owner that stores [a copyrighted work] as electronic information and serves that electronic information directly to the user […] is displaying the electronic information in violation of a copyright holder's exclusive display right"); and infringing FGI's exclusive right to prepare derivative works of the FGI Guidelines (*see, e.g., Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 192 F. Supp. 2d 321, 331, 348 (D.N.J. 2002), *aff'd*, 342 F.3d 191 (3d Cir. 2003), *as amended* (Sept. 19, 2003) (posting portions excerpted from copyrighted work on the internet constitutes an infringement of the right to prepare derivative works)).

Accordingly, FGI has a very strong likelihood of prevailing on its claim for copyright infringement under 17 U.S.C. § 501.

### ii. Count II – Unfair Competition under Missouri Common Law.

With respect to FGI's second claim (unfair competition), Missouri common law recognizes a claim for unfair competition where, "in connection with the marketing of goods or services, the [defendant] makes a representation likely to deceive or mislead prospective purchasers by causing the mistaken belief that [1] the [defendant]'s business is the business of the [plaintiff], or [2] that the [defendant] is the agent, affiliate, or associate of the [plaintiff], or [3] that the goods or services

that the [defendant] markets are produced, sponsored, or approved by the [plaintiff]." *Am. Equity Mortg., Inc. v. Vinson*, 371 S.W.3d 62, 64-65 (Mo. Ct. App. 2012) (quoting Restatement (Third) of Unfair Competition, § 4); *see also National Motor Club of Mo., Inc. v. Noe*, 475 S.W.2d 16, 20 (Mo. 1972) ("Unfair competition . . . consists, essentially, in passing off or attempting to pass off, on the public, the goods or business of one person as and for the goods or business of another, or in the conduct of a trade or business in such a manner that there is either an express or an implied representation to that effect.").

UpCodes' decision to publish the FGI Guidelines constitutes conduct likely to deceive or mislead the public to mistakenly believe that UpCodes owns the FGI Guidelines, is authorized or licensed to provide copies of the FGI Guidelines, is an agent, affiliate, licensee, or associate of FGI, and/or that UpCodes' services are produced, sponsored, licensed, or approved by FGI. This deceptive and misleading conduct has damaged FGI, including by way of lost revenue from sales of the FGI Guidelines. FGI has more than a "fair chance" of prevailing on Count II.

Given UpCodes' disregard for FGI's rights under the Copyright Act and Missouri common law, FGI has not only a fair chance of success on the merits of its claims, but a high likelihood of success. This first factor thus supports entering a preliminary injunction against UpCodes.

c. **There Is a Threat of Irreparable Harm to FGI.**

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). There is a threat of irreparable harm to FGI if UpCodes is not enjoined because UpCodes provides the FGI Guidelines without charge, undermining FGI's only recurring sourcing of funding and threatening to eliminate FGI as a going concern. If FGI cannot fund its operations through sales of the FGI Guidelines, it must either

8

discontinue operations entirely or become dependent on external sources, which would damage FGI's strong reputation and goodwill as a credible, independent standard-setting organization.

Here, irreparable harm is likely, as UpCodes' conduct, if left unchecked, will either force FGI to discontinue operations entirely, or harm FGI's reputation by robbing FGI of its much-valued independence and objectivity. FGI revises the FGI Guidelines based on an objective assessment of prevailing research and best practices through a consensus-forming process involving industry expertise from multiple disciplines. Erickson Decl. ¶ 8. FGI enjoys a positive reputation, and substantial credibility, among state and local government authorities, regulatory officials, as well as private enterprises, and industry experts and trade groups because of its conscious dedication to neutrality and independence in its consensus forming process. *Id*. ¶ 12. FGI has considered accepting outside money to fund its operations, but has foregone such opportunities in a conscious decision to ensure that its revision process is free from the pressure that might otherwise be exerted by dependency on an external funding source. *Id*. ¶ 13. FGI's independence ensures that it arrives at its standards candidly, fairly, and knowledgeably through a transparent and open consensus process. *Id*. ¶ 15.

Accordingly, FGI relies on sales of the FGI Guidelines (primarily the most recent editions) for funding the revision and publication of the next editions. *Id*. ¶ 16. FGI is a non-profit enterprise and charges only as much as is necessary to fund its operations. *Id*. ¶¶ 3, 17. Of note, FGI makes older versions of the FGI Guidelines available for free, and provides limited public access to the current versions of the FGI Guidelines. *Id*. ¶ 18.

By making the FGI Guidelines completely available at no charge, UpCodes undermines the commercial value of the FGI Guidelines and undercuts FGI's ability to generate revenue through sales of its Guidelines. *Id*. ¶ 24. If FGI cannot fund its operations through sales of its

9

Guidelines, FGI will be forced to either discontinue operations entirely, or seek funding from other sources. *Id.* ¶ 25. This would call into question the objectivity of FGI's recommendations and cause permanent damage to FGI's reputation and goodwill. *Id.* Either result – the loss of FGI as a going concern, or the loss of FGI's independence – constitutes harm for which the law cannot provide an adequate remedy. *See, e.g., Laredo Ridge Wind, LLC v. Nebraska Pub. Power Dist.*, 2020 WL 1848079, at *8 (D. Neb. Apr. 13, 2020) ("[P]roof that a going concern will be forced out of business during the pendency of litigation raises a presumption of irreparable harm.") (citation omitted); *Summit Res. Grp., Inc. v. JLM Chems., Inc.*, 2008 WL 5423447, at *3 (E.D. Mo. Dec. 29, 2008) ("Once a going concern is no longer, monetary damages are an inadequate remedy."); *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002) ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury.").

        **d.    The Balance of the Harms Weighs in Favor of Granting Injunctive Relief.**

"[T]he balance of harms analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public." *Noodles Dev., LP v. Ninth St. Partners, LLP*, 507 F. Supp. 2d 1030, 1038 (E.D. Mo. 2007). Although this factor "is generally regarded as insignificant in a copyright infringement action," *Thimbleberries, Inc. v. C & F Enters., Inc.*, 142 F. Supp. 2d 1132, 1142 (D. Minn. 2001), the Court may weigh the harm that FGI would suffer if UpCodes' conduct is allowed to continue during the pendency of this litigation, the harm to the public, and the alleged harm to UpCodes.

The balance of harms clearly favors granting the requested injunction, as UpCodes' conduct threatens to eliminate FGI entirely as a going concern or permanently damage FGI's reputation as an independent and objective standard-setting organization, which in turn will harm the public in terms of losing this standard-setting organization's beneficial work, as further noted

below. By contrast, granting the preliminary injunction threatens little harm or loss to UpCodes. As UpCodes will no doubt assert in its anticipated fair use argument, UpCodes gives the FGI Guidelines away for free, and thus will suffer no discernible pecuniary loss if they are removed from its website. Further, any financial loss UpCodes might experience from being unable to continue its infringing behavior is not a legally cognizable harm. *See, e.g., Control Data Sys.*, 903 F. Supp. at 1325 (disallowing consideration of financial loss to an alleged infringer in the balance of harms factors); *see also Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) ("It would be incongruous to hold that the more an enterprise relies on copyright infringement for survival, the more likely it will be able to defeat the copyright owner's efforts to have that activity immediately halted. We see little reason why an entity should be allowed to establish and continue an enterprise based solely on what is in all likelihood copyright infringement, simply because that is its only business.").

Furthermore, even if granting the relief sought would have a monetary impact to UpCodes, it would be clearly outweighed by the above-noted harm to FGI and the below-noted harm to the public. This factor clearly weighs in favor of granting the requested relief.

e.   **Issuance of the Requested Injunction Is in the Public Interest.**

The Eighth Circuit has recognized that "[t]he public interest is served in protecting the holders of valid copyrights from infringing activities." *Taylor Corp.*, 315 F.3d at 1042; *see also E.F. Johnson Co. v. Uniden Corp. of Am.*, 623 F. Supp. 1485, 1491 (D. Minn. 1985) ("It is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.") (citation and alteration omitted).

In this particular case, however, the public interest goes beyond merely a general interest in protecting valid copyrights. As alleged in the Complaint, many states have recognized the value of the FGI Guidelines by making reference to the FGI Guidelines in the respective state's regulations regarding the construction and renovation of hospitals, outpatient facilities, and other health and residential care facilities using FGI's independent consensus-based process. Complaint ¶ 25; Erickson Decl. ¶ 9. Thus, states rely on the FGI Guidelines to set minimum standards for the planning and design of health and residential care facilities. As such, the public, in turn, relies on FGI to regularly publish updated versions of the FGI Guidelines that meet evolving architectural, engineering, medical, and scientific standards.

The public thus benefits in several respects. First, the government has access to neutrally- and independently-developed standards for the planning and design of crucial health care infrastructure, a growing sector of the economy in which government is increasingly involved at all levels – federal, state, and local. By developing and publishing the FGI Guidelines, all states have affordable access to the most current architectural, engineering, medical, and scientific standards for critical health care infrastructure. Further, the public benefits by having such facilities constructed and renovated in accordance with the FGI Guidelines, ensuring that the public has continued access to safe, modern, and patient/resident focused care environments.

For example, in response to the COVID-19 pandemic, FGI used the revenue it earned from sales of the FGI Guidelines to fund the research and development of *Guidance for Designing Health and Residential Care Facilities that Respond and Adapt to Emergency Conditions*, which was ultimately released for comment on the FGI website in March 2021. Erickson Decl. ¶ 26. The overarching goal of this publication was to assist health and residential care organizations in responding to emergency events and plan mitigation strategies in anticipation of future emergency

events *Id*. ¶ 27. This paper was the result of a collaboration of 130 volunteers representing multiple disciplines in health care, residential care, and facility design, as well as other subject matter experts and the FGI staff. *Id*. ¶ 28. Without funding from sales of the FGI Guidelines, FGI simply would not have been able to develop this paper, nor will it be able to develop future editions of the FGI Guidelines. *Id*. ¶ 29.

UpCodes' infringement of the FGI Guidelines directly undermines FGI's ability to earn revenue from the sales of the FGI Guidelines and thus, undermines FGI's ability to do the important and necessary work that precipitates the publication of new editions of the FGI Guidelines and other papers on related topics. If FGI cannot fund its operations from sales of the FGI Guidelines, FGI must either discontinue its operations, depriving the public of future updates to the FGI Guidelines based on current science and research, or FGI must fund its operations by accepting contributions from outside, interested parties who would then be in position to exert influence on FGI's decision-making process. Erickson Decl. ¶¶ 10–16, 24–25.

As such, the public interest clearly weighs heavily in favor of entering a preliminary injunction against UpCodes.

  **f. There Is No Viable Defense for UpCodes' Infringing Conduct.**

    **i. The Government Edicts Doctrine Does Not Nullify FGI's Copyrights in the FGI Guidelines.**

FGI anticipates that UpCodes will attempt to justify its infringing behavior on grounds that the government edicts doctrine somehow nullifies FGI's copyrights. This is a red herring. The government edicts doctrine stands for the unremarkable legal premise that, when the government authors a legal document in the course of its duties, no copyright subsists in that document.

This principle (inapplicable here as explained further below) was recently affirmed by the Supreme Court in *Georgia v. Public.Resource.Org, Inc.*, wherein the majority held that "copyright

13

does not vest in works that are (1) created by judges and legislators (2) in the course of their judicial and legislative duties." 140 S. Ct. 1498, 1508 (2020). In *Georgia*, the Court addressed the government edicts doctrine in determining whether non-binding annotations appearing beneath each statutory provision of the Official Code of Georgia Annotated, which were prepared by LexisNexis at the direction of the Georgia legislature under a work-made-for-hire agreement, were eligible for copyright protection. *Id.* at 1501. The Court concluded that, under the government edicts doctrine, they were not.

The Court specifically distinguished between circumstances where a <u>government agent</u> authors a given type of work in the course of his or her governmental duties, and where a <u>non-government</u> actor authors the same type of work. The majority opinion cited *Banks v. Manchester*, 128 U.S. 244 (1888), wherein a judge prepared non-binding explanatory materials such as syllabi and head notes to accompany his judicial opinions, and the Supreme Court held that no copyright subsisted in those materials because the judge prepared them in his judicial capacity and thus could not be the "author" of them for copyright purposes. *Id.* at 1506–07. The majority contrasted this holding with *Callaghan v. Myers*, 128 U.S. 617 (1888), a companion case decided the same term as *Banks*, wherein an official reporter's similar explanatory materials were deemed copyrightable because, although the nature of the works mirrored those in *Banks*, the works originated from the official reporter, who had no authority to speak with the force of law. *Id.* at 1507.

Thus, the Supreme Court articulated a "straightforward rule" based on authorship: if an "official empowered to speak with the force of law," such as a judge or legislator, is the author of a work, that work is not eligible for copyright protection. *Id.* at 1513. If, however, the author of the work is *not* an "official empowered to speak with the force of law," the work remains eligible for copyright protection and the government edicts doctrine does not apply. *Id.* Thus, in

14

determining whether the government edits doctrine applies, the court should "ask *only* whether the author of the work is a judge or a legislator." *Id*. (emphasis added). As such, **the government edicts doctrine does not apply "to works created by . . . *private parties*[] who lack the authority to make or interpret the law[.]**" *Id*. at 1507 (emphasis added).

The government edicts doctrine does not apply here for the simple fact that FGI is <u>not</u> the government. FGI is a private, non-profit enterprise whose publications are created based on research and collaboration with industry experts, and FGI publishes its guidelines based on its objective analysis of best practices, free from the political influence that might be exerted by government regulators, and free from the commercial influence that might be exerted by private enterprises. Erickson Decl. ¶¶ 3, 8, 11. FGI, like the official reporter in *Callaghan*, does not and cannot speak with the force of law. Accordingly, like the official reporter in *Callaghan*, FGI owns copyrights in its original authorship of the FGI Guidelines.

FGI fully expects that UpCodes will nevertheless take the position, as it has with other victims of its piracy, that because governments have adopted the FGI Guidelines, the copyright is lost because FGI cannot "own the law." However, the text of the FGI Guidelines is not "the law" and does not appear in the text of any law or regulation. All of the states that have adopted any of the FGI Guidelines have done so by reference only, and have not repeated or reproduced the text of any of the FGI Guidelines *in the law*. *See* Erickson Decl. Ex. D. FGI is unaware of any instance in which a privately authored, otherwise copyrightable work of authorship has lost its copyright status under the factual circumstances presented here. To the contrary, courts have consistently held otherwise. *See, e.g., Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, No. 13-CV-1215 (TSC), 2022 WL 971735, at *9 (D.D.C. Mar. 31, 2022) ("Defendant does not offer any evidence that a judge or legislator wrote any of Plaintiffs' standards. Instead, it argues that once

incorporated into law, Plaintiffs' standards are recreated as—transformed into—government edicts. … **A government body that merely incorporates a standard by reference does not independently create any content, and therefore does not become an 'author' of the standard.**") (emphasis added) (internal quotations and alterations omitted); *CCC Info. Servs. Inc. v. Maclean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 74 (2d Cir. 1994) (rejecting the argument that the mere reference to a copyrighted work in a state statute or regulation could strip the privately-authored work of its copyright protection); *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 518–19 (9th Cir. 1997) (declining to find that the American Medical Association lost its copyright in a medical coding system merely because a state statute required citizens to reference the medical codes when applying for benefits).

FGI does not purport to "own the law," and UpCodes is not engaged in an altruistic mission to free it. UpCodes is infringing copyrights held by a private, independent, non-profit organization to protect its millions of dollars in investment in UpCodes from venture capitalists. *See* Complaint, ¶ 6; Bruno Decl. ¶ 13.

## ii. UpCodes' Use of the FGI Guidelines Is Not A Fair Use.

UpCodes also cannot rely on the "fair use" doctrine to defend its infringement of the FGI Guidelines. The Copyright Act sets out a non-exhaustive list of four factors factfinders consider when assessing whether a defendant has made "fair use" of a copyrighted work, such that the use does not constitute an infringement. 17 U.S.C. § 107. They are: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion of the work used in relation to the work as a whole; and (4) the effect of the use on the market for, or the value of, the work. These factors weigh against any asserted fair use defense. *Id.*

16

With respect to the purpose and character of the use, UpCodes is using the FGI Guidelines for several reasons. First, UpCodes uses the FGI Guidelines as bait to find sales leads by luring potential customers seeking copies of the FGI Guidelines to the UpCodes Website, where UpCodes then bombards the visitor with promotions for UpCodes' paid "Premium" platform. Bruno Decl. ¶¶ 9–10. Second, UpCodes uses the FGI Guidelines within that paid premium service, providing enhanced features to justify the fees UpCodes charges its paying customers. *Id*. ¶ 8. Both of these uses are commercial, and neither is transformative. UpCodes merely reproduces the text of the FGI Guidelines for consumption by the same audience for whom FGI publishes the FGI Guidelines, and for the same purpose. Erickson Decl. ¶ 19. To the extent UpCodes attempts to characterize its conduct as transformative because UpCodes is presenting the FGI Guidelines not as a standard, but rather as a regulation, the intended use of the FGI Guidelines is as a regulatory standard for planning and designing health and residential care facilities. Thus, even in its own rationalization, UpCodes is using the FGI Guidelines for the very purpose it was intended, which imparts no "new expression, meaning or message." *See Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898, 910 (E.D. Mo. 2015) (quoting *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013)). This factor weighs against a finding of fair use.

On the second factor, the nature of the copyrighted work, the FGI Guidelines have been developed as the result of decades of expert interaction and research through a painstaking multidisciplinary consensus-forming process involving the contributions of many industry leaders. Thus, the FGI Guidelines are entitled to a high degree of protection. *Id*. at 911 ("The second statutory factor, 'the nature of the copyrighted work,' recognizes that some works are closer to the core of intended copyright protection than others.") (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 582 (1994)). This factor, too, weighs against fair use.

On the third factor, the amount and substantiality of the portion of the work used in relation to the work as a whole, UpCodes has not copied just one chapter or one section of the FGI Guidelines but instead has copied the most technical aspects of the FGI Guidelines in their entirety. Erickson Decl. ¶ 19; Bruno Decl. ¶¶ 4–7 and Exs. E–K thereto. The portions of the FGI Guidelines that UpCodes omits, such as the preface, do not go the heart of the work and the fact that UpCodes has omitted such materials does not weigh in favor of fair use. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 564–65 (amount and substantiality factor weighed in favor of granting an injunction where the copied portion of the work was relatively small—less than 13 percent of the entire work—but went to "essentially the heart of the [work].") In fact, this factor weighs against fair use.

On the fourth factor, the effect of the use on the market for, or the value of, the infringed work, UpCodes' publication of the FGI Guidelines on its website for free has a highly detrimental impact on the value of the FGI Guidelines. If the FGI Guidelines can be obtained for free from UpCodes, there is little reason to purchase a copy from FGI. Erickson Decl. ¶ 24. Accordingly, this factor, like the other three factors, weighs against a finding of fair use.

### III. CONCLUSION

For the foregoing reasons, Plaintiff Facility Guidelines Institute, Inc. respectfully requests that this Court enter a preliminary injunction enjoining Defendant UpCodes, Inc. from further infringing upon FGI's copyrights, including by requiring UpCodes to remove all references to, and copies of, the FGI Guidelines from its website.

Dated: December 6, 2022

Respectfully submitted,

**LEWIS RICE LLC**

By: */s/ Michael J. Hickey*
Michael J. Hickey, #47136MO
Benjamin J. Siders, #61799MO
Lindsey M. Bruno, #73055MO
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Telephone: (314) 444-7630
Facsimile: (314) 612-7630
mhickey@lewisrice.com
bsiders@lewisrice.com
lbruno@lewisrice.com

*Attorneys for Plaintiff Facility Guidelines Institute, Inc.*