UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FACILITY GUIDELINES INSTITUTE, INC., ) ) ) Plaintiff, ) ) v. ) ) UPCODES, INC., ) ) Defendant. ) | Case No.  4:22-cv-01308-AGF |

## MEMORANDUM AND ORDER

The matter is before the Court on the motion of Plaintiff Facility Guidelines Institute, Inc. ("FGI") for a preliminary injunction against Defendant Upcodes, Inc.  (Doc. No. 5). Oral argument on the motion was held on June 6, 2023.  Upon review of the record, including the evidence properly before the Court for purposes of the motion for a preliminary injunction, and upon consideration of both parties' oral argument, FGI's motion for a preliminary injunction will be denied, as set forth below.

## BACKGROUND

FGI is an independent, non-governmental, not-for-profit 501(c)(3) corporation. Founded in 1998, FGI is responsible for reviewing, revising, updating, and publishing three sets of guidelines pertaining to the construction of health care facilities: (1) Guidelines for Design and Construction of Hospitals; (2) Guidelines for Design and Construction of Outpatient Facilities, and (3) Guidelines for Design and Construction of Residential Health, Care, and Support Facilities (collectively, the "FGI Guidelines").  FGI owns copyright

registrations for each of the FGI Guidelines published since 2006, including the 2018 and 2022 editions.

FGI reviews and revises the Guidelines on a regular cycle in a consensus process carried out by a multidisciplinary group of experts.  FGI is not a trade group; it does not have members, sponsors, or affiliates who provide funding through membership fees or dues.  FGI intentionally maintains neutrality and independence from outside influence, which allows FGI to develop and publish standards based on engineering principles and research without influence from paying members or sponsors.  FGI relies on the sales of the FGI Guidelines (primarily the most recent editions) for funding the revision and publication of the next editions.  FGI is a non-profit enterprise and thus charges only as much as necessary to fund its operations.  FGI makes older versions of the FGI Guidelines available for free and provides limited public access to the current version of the FGI Guidelines.[1]

UpCodes was founded in 2016 by two brothers, Scott and Garrett Reynolds, with the mission of making it easier for laypeople and professionals in the architecture, engineering, and construction industries to understand how to comply with state and local building codes.  UpCodes publishes such codes on its website.  UpCodes maintains that it does not post model standards—including FGI's model standards—as model standards, but only as adopted into law by specific jurisdictions.  With respect to this case, UpCodes explains that it only posts the laws that have adopted or incorporated the FGI guidelines by reference.

---

[1]     Users can obtain limited public access to recent and current FGI Guidelines on its website upon registering for an account and agreeing to FGI's terms of use.  Users can access 10 pages of the 2014, 2018, or 2022 editions of the FGI Guidelines per session, three times per month.  Users are not permitted to copy, print, or reuse information from FGI's website without FGI's permission.

Any user can view and copy a supported jurisdiction's codes—with that jurisdiction's amendments integrated into the text—for free and without registering for an account.  If a user wants features beyond full access to the law, such as advanced search and automation tools, UpCodes offers those services for a fee.

**Procedural History**

On December 6, 2022, FGI filed a complaint in this Court alleging copyright infringement under 17 U.S.C. § 501 and common-law unfair competition under Missouri law.  Doc. No. 1.  The same day, it filed this instant motion for preliminary injunction.  Doc. No. 5.  On January 11, 2023, UpCodes filed its opposition to the preliminary injunction, and shortly thereafter filed a motion to dismiss on similar grounds.  Doc. Nos. 28 and 34.  Briefing on the two motions was completed on February 27, 2023.  On March 8, 2023, the Court held a video conference with counsel to discuss the pending preliminary injunction motion and case scheduling.  The parties informed the Court that they did not require any discovery or further briefing in connection with the preliminary injunction motion.  The parties agreed that an evidentiary hearing was not required but requested in-person oral argument on the issue.  The parties also agreed to engage in good-faith settlement discussions related with respect to the 2018 FGI Guidelines and participate in good-faith discussions with respect to whether a temporary standstill agreement could be reached on the 2022 FGI Guidelines pending a determination by the Court on the preliminary injunction motion.  Doc. No. 46.

Over the next two months, the parties periodically informed the Court of their ongoing settlement discussions.  On May 12, 2023, the parties filed a joint status report and motion for a hearing on the preliminary injunction.  Doc. No. 48.  The parties informed the

Court that while they had participated in good-faith settlement discussions, they were unable to reach an amicable resolution.  With respect to the 2022 FGI Guidelines, the parties noted that, without waiver of their positions, including FGI's right to amend its Complaint to further allege facts related to UpCodes' temporary posting and subsequent removal of the 2022 FGI Guidelines, the parties agreed to a temporary standstill such that UpCodes removed and will not re-post or post any of the 2022 FGI Guidelines until at least ten business days after the Court's ruling on the preliminary injunction motion.  Upon the parties' request, oral argument for the preliminary injunction motion took place on June 6, 2023.  Doc. No. 50.

## ARGUMENT OF THE PARTIES

FGI argues that it is entitled to a preliminary injunction enjoining UpCodes from continuing its copying, publication, and distribution of the FGI Guidelines on the UpCodes website because FGI has more than a "fair chance" of prevailing on its copyright infringement and unfair competition claims; UpCodes' conduct threatens irreparable harm to FGI in that it will either force FGI to discontinue operations entirely or will harm FGI's reputation by robbing FGI of its much-valued independence and objectivity; there is little threat of harm to UpCodes aside from a potential minimal pecuniary loss; and the issuance of the injunction is in the public's interest.

In response, UpCodes argues that FGI is not likely to succeed on the merits of its copyright claim because UpCodes is merely publishing the law and "no one can own the law" and to the extent any of the materials on UpCodes' website are not "the law," reproducing them in their entirety is permissible under the doctrine of fair use.  UpCodes also argues that FGI's unfair competition claim fails because Upcodes does not make any

-4-

representations that it is an authorized FGI distributor or any other representations that are likely to deceive the public.  UpCodes further argues that FGI cannot establish a threat of irreparable harm; the balance of hardships weighs in favor of UpCodes; and an injunction would disserve the public interest in wide and unfettered access to and knowledge of the law.

In reply, FGI argues that UpCodes' characterization of the guidelines as "the law" is incorrect and the FGI Guidelines are still protected by copyright regardless of whether a state adopts or incorporates the FGI Guidelines by reference.  FGI also argues that UpCodes is *only* posting the FGI Guidelines and is not posting the actual laws of the various states.

Additional facts and arguments will be discussed in further detail below as relevant to the parties' specific arguments.

## DISCUSSION

"A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant."  *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (quoting *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)).  Courts consider four factors in determining whether to issue a preliminary injunction: (1) the threat of irreparable harm to the movant; (2) the balance between this harm and the injury that granting an injunction will inflict on other parties; (3) the movant's probability of success on the merits; and (4) the public interest.  *D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 999 (8th Cir. 2019).  In the Eighth Circuit, these four factors are known as the "*Dataphase*" factors, based upon the 1981 en banc case, *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

In each case, the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief.  *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d

1219, 1222 (8th Cir. 1986).  No single factor is dispositive; however, the movant's

probability of success is the most significant factor.  *Young*, 33 F.4th at 1016.  The party

requesting injunctive relief bears the "complete burden" of proving that an injunction should

be granted.  *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

## Likelihood of Success

The Eighth Circuit has expressly rejected the notion that a plaintiff must prove a

greater than 50% likelihood that he or she will prevail on the merits.  *See Dataphase*, 640

F.2d at 113.  There is no bright-line percentage or "mathematical probability" that FGI must

meet at this stage, rather, FGI need only show that it has a "fair chance" of prevailing on its

claims.  *Bao Xiong*, 917 F.3d at 999; *Dataphase*, 640 F.2d at 113.

### Copyright Infringement Claim

FGI contends that it is likely to prevail on its claim for copyright infringement

because it holds a valid copyright for the 2018 FGI Guidelines and UpCodes has engaged in

clear and direct infringement without any viable defense.  To establish a claim of copyright

infringement, a plaintiff must prove (1) that they own a valid copyright, and (2) that the

defendant copied constituent elements of the work that are original.  *Feist Publ'ns, Inc. v.

Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991).  There is no dispute that FGI has copyrights

for the 2018 and 2022 Guidelines, nor is there any dispute that the UpCodes' website

contains near or exact duplicates of the 2018 Guidelines.

The issue in this case is whether model codes, such as the FGI Guidelines, authored

by private entities which are then incorporated by reference or adopted into state law are still

protected by copyright.  UpCodes contends that the 2018 FGI Guidelines, as published on its

website, have been adopted or incorporated by reference into state law, thus they are part of

the public domain and "speaking the law" does not infringe on anyone's copyright.  In turn,

FGI contends that privately authored work does not lose its copyright protections when it is

adopted or incorporated by reference into state law.

> Government Edicts Doctrine

The parties' main dispute is whether the government edicts doctrine applies in this

matter.  As discussed below, the government edicts doctrine does not apply in this case, but

it provides significant guidance to the remainder of this Court's analysis while not being

dispositive of UpCodes' argument.  The government edicts doctrine establishes that

"government officials empowered to speak with the force of law cannot claim copyright in

works created in the course of their official duties, whether or not the works themselves

carry the force of law."  *Int'l Code Council, Inc. v. UpCodes, Inc.,* No. 17 Civ 6261 (VM),

2020 WL 2750636, at \*8 (S.D.NY. May 27, 2020) ("*ICC*") (citing *Georgia v.*

*Public.Resource.Org. Inc.*, 140 S.Ct. 1498 (2020) ("*PRO*").  In establishing this rule, the

Supreme Court focused on who authored the works: if it was a judge or legislator, they could

not be considered authors entitled to copyright because they were "vested with the authority

to make and interpret the law," but if the author was a private party, the Court found that the

government edicts rule "does not apply . . . to works created by private parties[ ] who lack

the authority to make or interpret the law."  *PRO*, 140 S.Ct. at 1507.  Because FGI is a

private entity that lacks the authority to make or interpret the law, the government edicts

doctrine does not apply.

However, the "animating principle" of the doctrine offers important insight into the

analysis.  "The animating principle behind [the government edicts doctrine] is that no one

can own the law.  Every citizen is presumed to know the law, and it needs no argument to

show … that all should have free access to its contents." *Id.* (internal quotations marks
omitted).  With this principle in mind, the Court must determine whether the FGI Guidelines
as adopted or as incorporated by reference are "the law" for the purpose of copyright
protection.  A number of courts have addressed this issue with respect to model codes.

<u>Model Code Cases</u>

The majority of courts that have considered this issue have ultimately concluded that
model codes that are adopted into state law, or incorporated by reference, are not subject to
copyright infringement.  In *Building Officials & Code Admn. v. Code Tech., Inc.*, 628 F.2d
730 (1st Cir. 1980) ("*BOCA*"), the defendant published and sold the Massachusetts Building
Code, which adopted the plaintiff's model building code with minor amendments.  *Id.* at
732.  The First Circuit did not definitely rule on the issue as to whether the model code, as
adopted, became part of the public domain, thus free from copyright infringement, stopping
short of this conclusion in order for a hearing on the merits to be held in the lower court.  *Id.*
However, the First Circuit's decision expressly disagreed with the lower court's finding that
plaintiff was likely to succeed on the merits, emphasizing "the very important and practical
policy that citizens must have free access to the laws which govern them … based on the
concept of due process."  *Id.* at 734-35.

The First Circuit noted that the building codes at issue "[had] the effect of law and
carr[ied] sanctions of fine and imprisonment for violations," which heightened due process
concerns.  *See id.*  The *BOCA* court further noted that it could not see how the plaintiff's
ability to prevent public access to the materials under its copyright could "be squared with
the right of the public to know the law to which it is subject."  *Id.*  In summation, the Court
stated, "[w]e are, therefore, far from persuaded that [plaintiff's] virtual authorship of the

Massachusetts building code entitles it to enforce a copyright monopoly over when, where, and how the [code] is to be reproduced and made publicly available.  We cannot say with any confidence that the same policies applicable to statutes and judicial opinions may not apply equally to regulations of this nature."  *Id.* at 735.[2]

The Fifth Circuit also considered this issue in *Veeck v. Southern Building Code Congress Int'l, Inc*., 293 F.3d 791 (5th Cir. 2002).  In *Veeck*, the plaintiff wanted to post the building codes of two towns in Texas, Anna and Savoy, on his non-commercial website.  The plaintiff was not able to easily locate the codes but knew both of the towns had adopted defendant's model code in full, so he purchased a copy of the model code and posted it on his website, identifying it as the building code for the two towns rather than defendant's copyrighted model code.  *See id.* at 793.  The Fifth Circuit similarly emphasized the need for citizens to have free access to the law.  *See id.* at 795-99.  The court ultimately concluded that "when Veeck copies *only* 'the law' of Anna and Savoy, Texas, which he obtained from SBCCI's publication, and when he reprinted only 'the law' of those municipalities, he did not infringe on SBCCI's copyrights in its model building codes."  *Id*. at 800.  However, the court noted in a footnote that its holding "might well be the opposite, if [the plaintiff] has copied the model codes *as* model codes, or if he has indiscriminately mingled those portions of 'the law' of Anna and Savoy adopted by their town councils with other parts of the model code not so adopted."  *Id.* at 800 n.14.

---

[2]     The Court did not rule finally on the issue before it was returned to the lower court for further analysis on the merits.  The case settled before any further evaluation by the First Circuit.

Here, UpCodes only publishes what has been adopted by the states, and in most cases, states have adopted the FGI Guidelines in their entirety without amendment. In the instance of Oregon, which adopted the FGI Guidelines with amendments, UpCodes only published the portions of the FGI Guidelines adopted by the state and integrated the amendments into the text. FGI argues that "the law" is only the text of that statute that adopts the FGI Guidelines, not the contents of the Guidelines themselves. In other words, in some cases only the language stating the state adopts the FGI Guidelines. However, this is the same issue that was at issue in *Veeck*, and compliance with such a statute requires compliance with all of the various rules set forth in the FGI Guidelines. Therefore, the public must be on notice of the requirements within the FGI Guidelines.

At oral argument, FGI also argued that the "shaded" portions of the FGI Guidelines contained appendices, commentary, and references and should not be considered as part of the law. However, there is no indication that the states only adopted the "unshaded" portions of the guidelines when they wholly adopted the FGI Guidelines without amendment. Further, as noted by UpCodes, the "shaded" portions are not mere commentary, but are portions of the law that are necessary for understanding and complying with the law. For example, the shaded portions contain definitions of terms, explanations of the applicability of the rule, and exceptions to the rules. *See* Doc. No. 38-6. Given these considerations, FGI's argument that only the unshaded portion constitutes the law is without merit.

In *American Society for Testing and Materials v. Public.Resource.Org. Inc*, 896 F.3d 437, 447 (D.C. Cir. 2010) ("*ASTM*"), the appellate court declined to rule on the parties' public domain arguments and instead instructed the district court to conduct a case-by-case analysis under the fair use doctrine, discussed *infra*. On this point, the court stated,

> [a]lthough [defendant] raises a serious constitutional concern with permitting
> private ownership of standards essential to understanding legal obligations, we
> think it best at this juncture to address only that statutory fair use issue … and
> leave for another day the question of whether the Constitution permits copyright
> to persist in works incorporated by reference into law …. [I]t is one thing to
> declare that 'the law' cannot be copyrighted but wholly another to determine
> whether any one of these incorporated standards … actually constitutes "the
> law."

*Id.*

Plaintiff relies heavily on the district court's decision on remand in *ASTM*.  Plaintiff suggests that the district court held that Plaintiff's copyrights could be enforced even if they were incorporated by reference into state law.  *See* Doc. No. 37 at 7.  This was not the holding.  The district court simply noted that the government edicts doctrine did not apply, stating "[a] government body that merely incorporates a standard by reference does not independently create any content, and therefore does not become an 'author' of the standard."  *See Am. Soc'y for Testing and Materials v. Public.Resource.Org. Inc*, 597 F.Supp.3d 213, 231-32 (D.D.C. 2022).  Whether the standards otherwise became "the law" once incorporated was not considered.  In fact, the district court specifically noted that the appellate court "did not rule on this issue, and 'left for another day' the 'thorn[y] question of whether standards retain their copyright after they are incorporated by reference into law.'" *Id.* at 232 (citing *ASTM*, F.3d at 441).  The district court went on to evaluate each standard under the fair use doctrine, ultimately finding that the defendant could copy, reproduce, or distribute the model standards that were incorporated by reference into law under the fair use doctrine but could not copy, reproduce, or distribute those standards which differed in substantial ways from those incorporated by reference into law.  597 F.Supp.3d at 240-41. The district court decision is currently on appeal.

In *ICC*, which involves a significantly similar fact pattern and the same defendant, the district court found on summary judgment that the plaintiff's model codes, as adopted, were part of the public domain because they were in fact "enacted state and local laws binding on the enacting jurisdictions' constituents," thus not subject to copyright protection. 2020 WL 2750636, at * 6. The court further held that even if the model codes as adopted were "not already covered by the law of public domain, it would be a fair use as a matter of law." *Id.* at *24. The *ICC* court set forth a number of factors to evaluate whether a privately authored work may "become the law" upon substantial government adoption:

(1) whether the private author intended or encouraged the work's adoption; (2) whether the work comprehensively governs public conduct, such that is resembles a 'law of general applicability'; (3) whether the work expressly regulates a broad area of private endeavor; (4) whether the work provides penalties or sanctions for violation of its contents; and (5) whether the alleged infringer has published and identified the work as part of the law, rather than the copyrighted material underlying the law.

*Id.* at *16. Here, FGI actively encourages the codes' adoption into law and even offers an "adoption toolkit" to assist authorities having jurisdiction (AHJs) in adopting the latest edition of the FGI Guidelines. Doc. No. 30-5, at 6. The FGI codes are designed to govern the conduct of architects, engineers, facility managers, and other health care stakeholders in the construction and development of health care facilities and they also regulate a broad area of private endeavor – health care facility construction. Once the FGI Guidelines are adopted by the states, violations are subject to various penalties and fines. Lastly, UpCodes has identified the work as part of the law.

Under such a test, the FGI Guidelines could be deemed "the law" for purposes of copyright. However, the *ICC* decision is not binding precedent on this Court, nor does the Court need to make such an evaluation at this juncture. Ultimately, all the cases discussed

above determined that there was no copyright infringement of model standards that were adopted into state law, either by finding those model standards were part of the public domain or through the doctrine of fair use.

<u>Incorporation by Reference</u>

Plaintiff relies on a number of cases that have found that when a government incorporates a private work by reference, it does not lose its copyright. However, as discussed in more detail below, such cases are factually distinct from the issues before this court. In *CCC Information Services Inc. v. Maclean Hunter Market Reports, Inc.*, 44 F.3d 61, 73-74 (2d Cir. 1994), the defendant argued that the "Red Book," a privately authored compilation of used automobile valuations, lost its copyright protections when it was incorporated by reference in state statutes and regulations. Several state statutes and regulations required "that insurance payments for total losses be at least equal to be either the Red Book value or to an average of Red Book and Bluebook values (unless another approved valuation method is employed)." *Id.* at 73. The Second Circuit noted a lack of authority on this issue and stated that "it was not prepared to hold that a state's reference to a copyrighted work as a legal standard for valuation results in the loss of the copyright."[3] *Id.* at 74.

*Practice Management Information Corp. v. American Medical Ass'n.*, involved an extensive coding system developed by the American Medical Association ("AMA") "to

---

[3]    The court also stated that "a rule that the adoption of such a reference by a state legislature of administrative body deprived the copyright owner of its property would raise very substantial problems under the Takings Clause of the Constitution." *Maclean*, 44 F.3d at 74. Here, neither party argues issues under the Takings Clause, nor is the federal government or any governmental party to this lawsuit such that the Takings Clause would apply.

enable physicians and others to identify particular medical procedures with precision" that
the AMA publishes as the Physician's Current Procedural Terminology ("CPT"), which is
revised each year to reflect new developments in medical procedures.  121 F.3d 516, 517
(9th Cir. 1997).  In 1977, Congress instructed the Health Care Financing Administration
("HCFA") to establish a uniform code for identifying procedures on Medicare and Medicaid
claim forms.  *Id.*  Rather than creating a code system from scratch, the HCFA contracted
with the AMA to "adopt and use" the CPT.  *Id.*  The plaintiff, Practice Management, a
publisher and distributor of medical books that would purchase copies of the CPT from the
AMA for resale, sought a declaratory judgment that the AMA's copyright in the CPT was
invalidated when the HCFA adopted the regulation mandating use of the CPT code numbers
in applications for Medicaid reimbursement.  *Id.* at 518.

The Ninth Circuit relied on *Banks v. Manchester,* 128 U.S. 244 (1888) in determining
that AMA's copyright should be enforced.  *Practice Management*, 121 F.3d at 518-520.
Crucial to this determination was the court's finding that the due process concerns of free
access to the law was not at stake in this case, explicitly noting that "[t]here is no evidence
that anyone wishing to use the CPT has any difficulty gaining access to it."  *Id.* at 519.  Nor
did the plaintiff assert that the AMA had restricted access to users or intended to do so in the
future.  *Id.*  The court further noted that in the event the AMA restricted public access to the
CPT, other remedies would be available for infringers, including fair use and due process
defenses.  *Id.*  The court also suggested that "mandatory licensing at a reasonable royalty
could be required in light of the great public injury that would result if adequate access to the
CPT were denied."  *Id.*

Here, UpCodes has asserted that FGI has restricted access to the law by failing to provide the state-adopted codes to the public for free.  Unlike the plaintiff in *Practice Management*, UpCodes is not attempting to resell the FGI Guidelines, but is providing copies of the law as enacted to the public for free.  In other words, Upcodes is not a "putative copier wishing to share in [FGI's] statutory monopoly."  *See id.* at 519.  Further the copyrighted work itself is distinguishable.  The CPT is an extrinsic numerical system developed to identify medical procedures; it was not a comprehensive model regulation that was adopted in whole as state law.  *See Veeck*, 293 F.3d at 803-04 (distinguishing *CCC and Practice Management*, "[t]his case does not involve references to extrinsic standards. Instead, it concerns the wholesale adoption of a model code promoted by its author … precisely for use as legislation.").

The Court recognizes the potential risks of adopting a bright line rule that any privately developed model code adopted into state law automatically becomes part of the public domain for copyright purposes.  Such a rule could disincentivize private organizations from developing, publishing, and updating essential technical regulations and may raise significant concerns under the Takings Clause.  *See Practice Management*, 121 F.3d at 519-20.  On the other hand, the Court is not persuaded that the need for economic incentives meaningfully outweighs the due process requirement that everyone have free access to the law, especially when it comes to the safe construction of health care facilities.  Perhaps, as suggested in *Practice Management*, the most equitable path forward involves the payment of a reasonable royalty or licensing fee when the government adopts a privately authored model code to offset the economic harm that results from free distribution to the public.  *See id.* at

519.  The Court need not adopt such a rule at this juncture, however, as the issue is ultimately resolved under the fair use doctrine.

Fair Use Doctrine

The Copyright Act provides that "the fair use of a copyrighted work … for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107.  In considering whether the use of a copyrighted work is fair use the court should consider the following factors:  (1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.  *Id.*  Such an evaluation requires a case-by-case analysis. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994).  The basic purpose of fair use "is providing a context-based check that can help keep a copyright monopoly within its lawful bounds."  *Google LLC v. Oracle Am., Inc.*, 141 S.Ct. 1183, 1198 (2021).  The Copyright Act's fair use provisions "'set forth general principles, the application of which requires judicial balancing, depending upon the relevant circumstances.'  Because those principles apply across a wide range of copyrightable material … fair use is a 'flexible' concept, and 'its application may well vary depending on context.'"  *Andy Warhol Found. For the Visual Arts, Inc. v. Goldsmith*, 143 S.Ct. 1258, 1274 (2023) (quoting *Google LLC*, 141 S.Ct. at 1197).

In *National Fire Protection Ass'n v. UpCodes, Inc.*, No. CV 21-5262 DSF (E), 2021 WL 4913276 (C.D. Cal. Aug. 9, 2021) ("*NFPA"*), which contains a similar fact pattern and

the same defendant, the district court denied plaintiff's motion for a preliminary injunction, finding that plaintiff was unlikely to succeed on the merits of its copyright infringement claim because of UpCodes' likelihood of success in its fair use defense.  Likewise, the *ICC* court found that even if UpCodes' accurate posting of the model codes as adopted was "not already covered by the law of public domain, it would be fair use as a matter of law."  *ICC,* 2020 WL 2750636, at \*24.

　　　As discussed above, the *ASTM* district court also determined on remand that all of the privately authored technical standards that had been incorporated by reference into federal law in their entirety amounted to fair use because the apparent purpose was to inform the public of the law and facilitate public debate rather than make a profit; the model standards were incorporated into law without limitation such that "the consequence of the incorporation by reference is virtually indistinguishable from a situation in which the standard had been expressly copied into law"; and the defendant's reproduction had not had a "substantially adverse impact on the potential market for the original," nor did the plaintiffs show "by a preponderance of the evidence that there [was] a meaningful likelihood of future harm."  597 F. Supp. 3d 213, 240-450.

### (1) Purpose and Character of Use

　　　When evaluating the first factor, purpose and character of the use, courts often discuss whether the use is "transformative."  *See Google LLC*, 141 S.Ct. at 1203.  A use can be transformative when it "seeks to create new products" and to "expand the use and usefulness" of preexisting materials.  *Id.*  "Posting enacted laws for the purpose of educating members of the public as to their legal obligations may be transformative, even if the enacted laws are identical to the copyrighted works."  *ICC*, 2020 WL 2750636, at \*24 (citing *ASTM*,

896 F.3d at 450) (suggesting that "in certain circumstances, distributing copies of the law for purposes of facilitating public access could constitute transformative use"); *see also A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009) (noting allegedly infringing uses "can be transformative in function or purpose without altering or actually adding to the original work"). Based on this reasoning, both *ICC* and *NFPA*, determined that UpCodes' publication of the model codes as enacted laws was transformative because the original works were intended to serve as recommendations on the standards governments should adopt to improve and safeguard certain industries, whereas UpCodes postings were the model codes as adopted and at that point constituted actual regulations binding the public and governing its conduct. *See Nat'l Fire Prot. Ass'n*, 2021 WL 4913276, at *4-5; *ICC*, 2020 WL 2750636, at *25.

The *ASTM* appellate court provided further guidance on this issue, stating that "[w]here an incorporated standard provides information essential to comprehending one's legal duties … this factor would weigh heavily in favor of permitting a non-profit seeking to inform the public about the law to reproduce in full the relevant portions of that particular standard." 896 F.3d at 450.

In support of its argument that UpCodes' use of the FGI Guidelines constitutes a transformative purpose, UpCodes asserts that in addition to its use of the model codes as enacted law being transformative, it also provides new and innovative ways for the public to access and use the law beyond what FGI offers, including integrated amendments for the jurisdictions that have adopted the FGI Guidelines with amendments; free and unlimited access to the law; the ability for users to copy and reprint the law; search functionalities; and code comparison technology. Doc. No. 28, 16-17. And importantly, to the extent the law as

-18-

enacted differs from the FGI Guidelines, UpCodes' publication reflects the enacted law—
something the FGI Guidelines do not provide.

FGI argues that UpCodes' use is clearly commercial, and it is using the FGI
Guidelines "as bait to find sales leads by luring potential customers seeking copies of the
FGI Guidelines to the UpCodes Website, where UpCodes then bombards the visitor with
promotions for UpCodes' paid 'Premium' platform." Doc. No. 7 at 17. Whether the use is
commercial or non-commercial is undoubtedly a significant consideration in evaluating this
factor. "[E]very commercial use of copyrighted material is presumptively an unfair
exploitation of the monopoly privilege that belongs to the owner of the copyright." *Harper
& Row Publishers, Inc. v. Nation Enters.* 471 U.S. 539, 562 (1985) (internal citations and
quotations omitted). "[A] finding that copying was not commercial in nature tips the scales
in favor of fair use. But the inverse is not necessarily true, as many common fair uses are
indisputably commercial." *Google LLC*, 141 S.Ct. at 1204. Even where a use is to some
extent commercial, "the commercial nature of a use is a matter of degree, not an absolute."
*Sega Enters. Ltd. v. Accolade Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1992), *as amended* (Jan. 6,
1993) (cleaned up). The Supreme Court recently summarized how to evaluate this first
factor,

> In sum, the first fair use factor considers whether the use of a copyrighted work
> has a further purpose or different character, which is a matter of degree, and the
> degree of difference must be balanced against the commercial nature of the use.
> If an original work and a secondary use share the same or highly similar
> purposes, and the secondary use is of a commercial nature, the first factor is
> likely to weigh against fair use, absent some other justification for copying.

*Goldsmith*, 143 S.Ct. at 177.

The Court disagrees with FGI's contention that UpCodes' use of the FGI Guidelines is purely commercial. No one contests that UpCodes is a for-profit commercial business, however, it provides the adopted FGI Guidelines entirely for free. While UpCodes may receive a tangential benefit of drawing users to its website and some of those users may elect to pay for premium features, it derives no direct monetary benefit from posting the FGI Guidelines as adopted. The benefit to the public of free access to the law exceeds the monetary benefit UpCodes' may eventually receive. As the other courts that have evaluated this unique factual scenario determined, the posting of enacted laws for the purpose of educating members of the public is a transformative use of the copyrighted work. To the extent the purpose of the original work and a secondary use share a somewhat similar purpose, the secondary use is largely of a non-commercial nature. Further the justification for copying here is significant; to provide the public with free access to enacted law. As such, the Court finds this factor weighs in favor of fair use.

### *(2) Nature of Work*

The second factor, the nature of the copyrighted work, "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. In evaluating this factor, courts often ask whether the work is factual or fictional, as "[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row*, 471 U.S. at 563. In *ASTM*, the appellate court found that "[a]ll of the works at issue here fall at the factual end of the fact-fiction spectrum, which counsel in favor of finding fair use." 896 F.3d at 451. The court further explained that the standards at issue had all "in some capacity, been incorporated by

-20-

reference into law, and … the express text of the law falls plainly outside the realm of copyright protection," and "standards incorporated by reference into law are, at best, at the outer edge of 'copyright's protective purposes.'"  *Id.* (citation omitted).

FGI argues that the FGI Guidelines "have been developed as the result of decades of expert interaction and research through a painstaking multidisciplinary consensus-forming process involving the contribution of many industry leaders.  Thus, the FGI Guidelines are entitled to a high degree of protection."  Doc. No. 7 at 17.  FGI also notes that many of the states that have adopted the 2018 FGI Guidelines have made express reference to the fact that FGI is the creator of and owns valid copyrights in the FGI Guidelines.[4]  FGI argues that this indicates that the states do not intend for the FGI guidelines to fall to the "outer edge" of copyright protection by virtue of being incorporated into law by reference.

The Court recognizes the considerable time, effort, and money that FGI dedicates towards developing the FGI Guidelines, but the Guidelines are entirely factual and have been adopted into law, thus there is a strong public interest in the dissemination of these standards so developers, engineers, architects, and the like can comply with the law when designing and building health care facilities.  As such, this factor tips in favor of fair use.  *See ASTM*, 896 F.3d at 451-52; *Nat'l Fire Prot. Ass'n*, 2021 WL 4913276, at \*5-6; *ICC*, 2020 WL 2750636, at \*26.

---

[4]      *See, e.g.*, Ariz. Admin. Code R9-10-104.01 (referring to the FGI Guidelines as being available at www.fgiguidelines.org); Mich. Admin. Code R 325.45263 (referring the FGI Guidelines as being available for purchase); N.H. Code Admin. R. He-P 800 App. A (referring the FGI Guidelines as being an "incorporated document … available for purchase).

### *(3) Amount and Substantiality*

The third factor instructs courts to evaluate "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  The Supreme Court has explained that "the extent of permissible copying varies with the purpose and character of the use" and characterized the relevant inquiry as whether "the amount and substantiality of the portion used … are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586-87 (quotation and citation omitted).  In other words, courts should determine "whether the secondary use employs more of the copyrighted work than is necessary, and whether the copying was excessive in relation to any valid purposes asserted under the first factor."  *Authors Guild Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014). "The 'substantiality' factor will generally weigh in favor of fair use where, as here, the amount of copying was tethered to a valid, and transformative, purpose."  *Google LLC,* 141 S.Ct. At 1205.

The copying of entire works "does not preclude a finding of fair use, [but] it militates against such a finding."  *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 926. (2d Cir. 1994).  "Complete unchanged copying has repeatedly been found justified as fair use when the copying was reasonably appropriate to achieve the copier's transformative purpose and was done in such a manner that it did not offer a competing substitute for the original." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 221 (2d Cir. 2015); *see also HathiTrust*, 755 F.3d at 98 (explaining that "for some purposes, it may be necessary to copy the entire copyrighted work, in which case Factor Three does not weigh against a finding of fair use."). The *ASTM* appellate court applied this rationale, explaining that where a defendant "limits its copying only to what is required to fairly describe the standard's legal import, this factor

would weigh strongly in favor of finding fair use here, especially given that precision is ten-tenths of the law." 896 F.3d at 452.

UpCodes has copied the majority, if not the entirety, of the FGI Guidelines, but it has done so only to the extent that governments have enacted such portions of the FGI Guidelines into law. UpCodes' copying is limited to what is contained in the enacted laws themselves and as such, it is tethered to its transformative purpose. On this basis, the Court finds that this factor weighs in favor of fair use.

### *(4) Effect on Market*

The fourth fair use factor evaluates "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant … would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (internal quotations and citations omitted). There is little doubt that UpCodes' use of the FGI Guidelines can affect the market for the FGI Guidelines, though to what extent, we can only speculate. Additionally, FGI noted without citation at oral argument that certain Secretary of State websites provide access to the FGI Guidelines but seems unconcerned with any market impact their use may have. FGI has not provided any quantifiable data of harm it has suffered since UpCodes' posting of the FGI Guidelines over a year ago. It is reasonable to assume that if the FGI Guidelines can be obtained for free from UpCodes or any other website, there is less incentive to purchase a copy of the codes from FGI. As such, this factor weighs against fair use, but not significantly, as on this record, FGI has not shown the extent of any market impact.

UpCodes argues that any harm FGI may suffer is not cognizable under the Copyright

Act because the dissemination of the law for free is favorable under the first factor.

However, on this record the weight of the other factors, and on balance, the Court is

persuaded that UpCodes' posting of the FGI Guidelines that have been adopted into law

likely constitutes fair use.  As such, there is not a fair chance that FGI will succeed on its

copyright infringement claim.

### Unfair Competition Claim

FGI also asserts a claim for unfair competition under Missouri law.  Missouri

recognizes a claim for unfair competition where,

> in connection with the marketing of goods or services, the [defendant] makes a
> representation likely to deceive or mislead prospective purchasers by causing
> the mistaken belief that the [defendant's] business is the business of the
> [plaintiff], or that the [defendant] is the agent, affiliate, or association of the
> [plaintiff], or that the goods and services that the [defendant] markets are
> produced, sponsored, or approved by the [plaintiff].

*Am. Equity Mortg., Inc. v. Vinson*, 371 S.W.3d 62, 64-65 (Mo. Ct. App. 2012) (quoting

Restatement (Third) of Unfair Competition, § 4); *see also Nat'l Motor Club of Mo., Inc. v.

Noe*, 475 S.W.2d 16, 19 (Mo. 1972) ("Unfair competition … consists, essentially, in passing

off or attempting to pass off, on the public, the goods or business of one person as and for

the goods or business of another, or in the conduct of a trade or business in such a manner

that there is either an express or implied representation to that effect.)

In order to prevail on an unfair competition claim, a plaintiff needs to show "[e]ither

actual or probable deception."  *Am. Ass'n of Orthodontists v. Yellow Book USA, Inc.*, 277

S.W.3d 686, 693 (Mo. Ct. App. 2008) (internal citation omitted).  "[T]he true test of unfair

competition [is] whether the defendant's acts … are calculated to deceive the ordinary buyer

making his purchases under the ordinary conditions." *Cornucopia, Inc. v. Wagman*, 710 S.W.2d 882, 888 (Mo. Ct. App. 1986).

Here, FGI claims that "UpCodes' decision to publish the FGI Guidelines constitutes conduct likely to deceive or mislead the public to mistakenly believe that UpCodes owns the FGI Guidelines, is authorized or licensed to provide copies of the FGI Guidelines, is an agent, affiliate, licensee, or associate of FGI, and/or that UpCodes' services are produced, sponsored, licensed, or approved by FGI." Doc. No. 7 at 8.

<u>Preemption by Copyright Act</u>

UpCodes argues that FGI's unfair competition claims are preempted by the Copyright Act. The Copyright Act preempts a state law claim if: "(1) the work at issue is within the subject matter of copyright as defined in § 102 and 103 of the Copyright Act, and (2) the state law created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in [the Copyright Act]." *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1142 (8th Cir. 2015). There is no dispute that the FGI Guidelines are within the subject matter of copyright as defined in §§ 102 and 103 of the Copyright Act. In determining whether the state law unfair competition claim lies within the general scope of copyright, courts look at whether an extra element is required in the state law claim and whether the claim is qualitatively different than the copyright claim. *See Nat'l Car Rental v. Comput. Assocs. Int'l*, 991 F.2d 426, 431 (8th Cir. 1993) ("If an extra element is 'required, instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption.") (citation omitted); *see Huckshold v. HSSL, L.L.C.*, 344 F. Supp. 2d 1203, 1206-07 (E.D. Mo. 2004) (explaining that "[t]he second prong of the

preemption test is satisfied unless there is an 'extra element' that changes the nature of the state law action so that is it '***qualitatively*** different from a copyright infringement claim.'") (citations omitted) (emphasis original); *see also Control Tech. & Sols., LLC v. Omni Energy Partners*, No. 4:21-cv-686-MTS, 2021 WL 6049812, at \*6 (E.D. Mo. Dec. 21, 2021) (finding that a Missouri unfair competition claim was not preempted by the Copyright Act because the plaintiff's unfair competition claim was "qualitatively different than a copyright claim.") (internal quotations omitted).

The Eighth Circuit has not yet considered whether the Copyright Act preempts Missouri or other state-law claims for unfair competition, however, several other circuits as well as district courts in the Eighth Circuit have considered this issue and have reached different conclusions. *Compare Warner Bros, Inc. v. Am. Broad. Cos., Inc.*, 720 F.2d 231, 247 (2d Cir. 1983) (finding the Copyright Act does not preempt a state unfair competition claim based on "passing off" because that right is not equivalent to those protected by copyright); *Wolff Shoe Co. v. Mosinger Co., LLC*, No. 4:11-CV-601 TIA, 2012 WL 1033364, at \*7 (E.D. Mo. Mar. 27, 2012) (finding that an unfair competition claim and a copyright claim are not equivalent because "the common law unfair competition claim requires the additional element of likelihood of confusion.") *with Issaenko v. Univ. of Minn.,* 57 F.Supp.3d 985, 1024 (D. Minn. 2014) ("As with other state law claims, claims for unfair competition are preempted by the Copyright Act to the extent they are 'based upon acts of copyright infringement.'") (citation omitted).

In *Control Technology*, the court analyzed the principles underlying copyright preemption and unfair competition, noting that Missouri courts have described the tort of unfair competition as a "reaffirmation of the rule of fair play" and "a protection against

companies deceiving the public." 2021 WL 6049812, at \*5-6 (citing *Tension Envelope Corp. v. JBM Envelope Co.*, 876 F.3d 112, 1121 (8th Cir. 2017)). The court emphasized the element of deception in differentiating unfair competition from copyright protection. *See id.* at \*6. The court found that the plaintiff's specific allegations that the defendants "engaged in several 'false and misleading' acts to mislead consumers" sufficiently differentiated its unfair competition claim from copyright to avoid preemption. *Id.*

In response to UpCodes' preemption argument, FGI clarified that "UpCodes is unfairly competing by referencing FGI's 2018 Guidelines adjacent to and concurrently with UpCodes' advertising of its fee-based, premium search tool," and in doing so, Upcodes deceives or misleads the public to mistakenly believe that UpCodes owns the FGI Guidelines or is otherwise associated with FGI. But the Court need not rule on preemption at this juncture, as an unfair competition claim is unlikely to succeed on the merits.

### Merits of Unfair Competition Claim

FGI has not explained how the mere proximity of UpCodes' premium content advertisement, which notably does not have reference to FGI and appears indiscriminately on virtually all of UpCodes' web pages, is likely to deceive or mislead the public to believe that UpCodes owns the FGI Guidelines or is otherwise affiliated with FGI. The text of the advertisement states, "Streamline code research. Elevate code research with automated analysis, shared projects, and interpretive diagrams. Start 2-Week Free Trial. Contact Sales." *See* Compl. ¶ 41. This scenario is a far cry from the type of deception and misleading behavior exhibited in the cases cited by FGI in support of its claim.

In *Control Technology*, the defendant stole proprietary materials, trade secrets, and clients and made explicit false representations about the plaintiff's business in order to poach

clients from the plaintiff's business.  2021 WL 6049812, at \*5-6.  In *Too, Inc. v. Kohl's Dep't Stores, Inc.*, the defendant tried to pass off the plaintiff's design as its own by submitting fraudulent copyright registrations and making false representations to customers that it had created the designs.  210 F. Supp. 2d 402, 404 (S.D.N.Y. 2002).  In *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, the defendant was alleged to have sold videos under its competitor's trademark.  210 F. Supp. 2d 552, 565 (D.N.J. 2002).  FGI does not allege that UpCodes made any explicit false misrepresentations, but rather that Upcodes implicitly misled the public regarding its affiliation with FGI based on the location of its premium content advertisement.  The Court is not persuaded on this record that an advertisement that is devoid of any reference to the plaintiff, the plaintiff's products, or the source of defendant's products can be "deceptive" based on the mere fact that it is located on the same webpage as content in which FGI is mentioned.  Accordingly, FGI is unlikely to succeed on the merits of its unfair competition claim.

## Threat of Irreparable Harm

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."  *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  "[T]he movant is required to show the threat of irreparable harm.  Thus, an absence of a finding of irreparable injury alone is sufficient ground for vacating the preliminary injunction."  *Dataphase*, 640 F.2d at 114 fn. 9.

FGI argues that there is a threat of irreparable harm because if UpCodes is not enjoined and continues to provide the FGI Guidelines without charge, it will undermine FGI's only recurring sourcing of funding and threaten to eliminate FGI as a going concern.

FGI contends that if it cannot fund its operations through sales of the FGI Guidelines, it must either discontinue operations entirely or become dependent on external sources, which would damage FGI's strong reputation and goodwill as a credible, independent standard-setting organization.

In opposition, UpCodes argues that FGI's 11-month delay before filing this suit negates its claims of irreparable harm; FGI's claims that it will need to cease operation entirely are speculative; and FGI's claim that dependence on external funding would damage its reputation is undermined by the history of the Guidelines.

"[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 138 S.Ct. 1942, 1944 (2018). Courts have recognized that long delays "may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction." *Adventist Health Sys./SunBelt, Inc. v. United States Dep't of Health & Human Servs.*, 17 F.4th 793, 805 (8th Cir. 2021) (affirming denial of preliminary injunction based on a one-year delay). There is no bright line rule with respect to the length of the delay; courts have denied motions for preliminary injunctions with delays of six months, *Grasso Enters., LLC v. Express Scripts, Inc.*, No. 4:14-CV-1932 HEA, 2015 WL 10781579, at *3-5 (E.D. Mo. Mar. 4, 2015), and courts have granted preliminary injunctions with delays of seven months. *Safety-Kleen Sys., Inc. v. Hennkens*, 301 F.3d 931, 936 (8th Cir. 2002). FGI contends that the length of time is measured from when the plaintiff first learned of the infringing conduct to when the case was filed, not from when the infringing conduct began. *See Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894 (8th Cir. 2013); *see also* 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (3d ed.) ("A long delay by plaintiff after learning of the threatened harmed also may be taken

as an indication that the harm would not be serious enough to justify a preliminary injunction."). On this basis, FGI contends that the length of delay is only four and one half months, because FGI only learned of UpCodes' infringing behavior on July 28, 2022, and filed suit on December 6, 2022. The Court agrees that this is the proper measurement of delay, and four to five months does not weigh against FGI in this instance. The parties also agreed that any further delay caused by settlement discussions should not be held against FGI for purposes of the preliminary injunction motion.

Regardless of any delay, UpCodes argues that FGI cannot demonstrate irreparable harm because its proffered harms are too speculative. Irreparable harm must be "certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. Fed Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996). "Possible or speculative harm is not sufficient." *Alt. Med. & Pharmacy, Inc. v. Express Scripts, Inc.*, No. 4:14-CV-1469 CDP, 2014 WL 4988199, at \*6 (E.D. Mo. Oct. 7, 2014) (citing *Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone Inc.*, 61 F.3d 1347, 1355 (8th Cir.1995)). In response to this argument, FGI cited a recent incident where a customer reached out to FGI asking to cancel its order of the 2018 FGI Guidelines because the customer already had access through UpCodes. The request for a refund for one copy of the 2018 FGI Guidelines is hardly sufficient to demonstrate irreparable economic harm "that jeopardizes FGI's very existence." *See* Doc. No. 37 at 15-16. FGI has offered no other support for the economic harm it will imminently suffer.

FGI also asserts that it will suffer irreparable reputational harm if it is forced to accept funding from external sources. UpCodes argues that this claim is belied by the fact that FGI and the prior entities responsible for publishing the guidelines have previously relied on

outside funding.  Specifically, UpCodes asserts that every edition of the Guidelines through
at least 2010 was subsidized by external government and external funding.  There is no
indication that the reputational harm that FGI fears is imminent or certain.  The threat of
irreparable harm is too speculative at this juncture to weigh in favor of a preliminary
injunction.

## Balance of Harms

"[T]he balance of harms analysis examines the harm of granting or denying the
injunction upon both of the parties to the dispute and upon other interested parties, including
the public." *Noodles Dev., L.P. v. Ninth St. Partners, LLP*, 507 F. Supp. 2d 1030, 1038
(E.D. Mo. 2007).  There is undoubtedly a potential harm to FGI in denying this preliminary
injunction, although as discussed, the Court cannot say on this record that the harm is either
irreparable or imminent, and there is little cognizable harm that UpCodes would suffer given
that it provides access to the FGI Guidelines for free, however the harm to the public weighs
against granting a preliminary injunction.  As discussed in more detail below, there is a
strong public interest in maintaining free access to the content of the FGI Guidelines as
adopted into law.

## Public Interest

There is a public interest in protecting copyrights.  *Taylor Corp. v. Four Seasons
Greeting, LLC,* 315 F.3d 1039, 1042 (8th Cir. 2003) ("The public interest is served in
protecting the holders of valid copyrights from infringing activities.")  But in this case, there
is a competing public interest in unfettered access to the law.  *PRO*, 140 S.Ct. at 1507 ("[N]o
one can own the law.  Every citizen is presumed to know the law, and it needs no argument
to show … that all should have free access to its contents.")  Here, the public's interest in

unfettered access to the law, specifically access to building codes for health care facilities outweighs the public's interest in enforcing a copyright. Such a finding is germane to the fair use analysis conducted above.

Therefore, upon careful consideration of all the *Dataphase* factors, the Court finds that FGI has failed to meet its burden to establish it is entitled to injunctive relief, and will deny FGI's motion for a preliminary injunction.

**CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's motion for a preliminary injunction is **DENIED**.  Doc. No. 5.

**IT IS FURTHER ORDERED** that within **14 days** of this order the parties shall inform the Court how they wish to proceed in this matter.  Specifically, whether the parties wish to convert the pending motion to dismiss into a motion for summary judgment in order to expand the current record.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 15th day of June 2023.